UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| JOHN RAY | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-46-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| NORTH AMERICAN STAINLESS. INC., | ) | **ORDER** |
| and NORTH AMERICAN STAINLESS | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff John Ray's first two complaints, which allege that his employer violated the Family and Medical Leave Act and the Americans with Disabilities Act, were each met by motions to dismiss from the named defendants, North American Stainless, Inc. and North American Stainless. In response to these motions, Ray moves for leave to file a second amended complaint, which adds facts and adjusts claims to address the deficiencies alleged by the Defendants. Because the Court finds that Ray's Second Amended Complaint corrects any potential errors in the earlier complaints, Ray's Motion for Leave to File a Second Amended Complaint shall be **GRANTED**, and the Defendants' Motions to Dismiss the earlier complaints shall be **DENIED**, as moot.

I

Defendant North American Stainless hired John Ray in May 1999, and he worked for the company on a schedule that involved him rotating between day and night shifts. [R. 12-2 at 2].

Around thirteen years later, while he was working for North American Stainless as a Backup Turn Leader, Ray was diagnosed with Type I diabetes. [*Id.*] Specifically, Ray indicates that his diabetes "substantially limits the functioning of his endocrine system to the degree that he is required to take medication on a daily basis to maintain the functioning of that system." [*Id.*]. Pursuant to the Family and Medical Leave Act, Ray took a leave of absence in order to receive medical treatment for this condition. [*Id.*]

In the same month as his diagnosis, Ray informed North American Stainless that he could return to work with an accommodation of working regular day shifts rather than rotating shifts. [*Id.* at 3]. Ray claims that a member of the management team informed him that the company would be able to accommodate his request. [*Id.*] However, North American Stainless later refused to provide this accommodation and did not allow him to come back to work on a straight day shift schedule. [*Id.*] On September 28, 2012, when Ray had exhausted his leave entitlement under the FMLA, North American Stainless terminated Ray's employment with the company. [*Id.*]

Ray filed a claim against North American Stainless with the Equal Opportunity Commission, and received his Notice of Rights on May 2, 2013. [*Id.* at 1-2]. On July 31, within ninety days of the issuance of the Notice of Rights, Ray initiated the present action in this Court. [R. 1]. In his original Complaint, Ray raised claims against North American Stainless Inc., for violation of the Americans with Disabilities Act and the Family and Medical Leave Act. [*Id.* at 1]. North American Stainless Inc. moved to dismiss this claim because, as verified by affidavit of its general counsel, the company did not have any employees. [R. 3]. North American Stainless, Inc. owns Stainless Alloys, Inc. and Stainless Steel Invest, Inc. [R. 6 at 2]. The

partnership between these two companies operates under the assumed name of North American Stainless, which is the entity that ran the plant where Ray worked. [*Id.*]  Ray has acknowledged the he named the wrong party [*Id.*], and filed his First Amended Complaint as a matter of right naming North American Stainless as defendant. [R. 5].  Ray has moved to have this First Amended Complaint relate back to the date on which he filed his original Complaint. [R. 7].

After Ray filed his First Amended Complaint, the proper North American Stainless moved to dismiss it for failure to state a claim on which relief could be granted. [R. 10]. Specifically, the Ray's former employer argues that the complaint alleges insufficient facts to show that his diabetes substantially limits a major life activity, his requested accommodation was reasonable, and that he reapplied for and was denied FMLA leave and was denied based on the company's actions.  Ray opposes the motion, but also moves for leave to file a Second Amended Complaint. [R. 12].  In this most recent complaint, Ray alleges more facts about each of the alleged deficiencies and clarifies the nature of his claim under the FMLA.  All of these pending motions are now briefed and ready for this Court's review.

II

A

Before addressing the more substantive matters at hand, two threshold issues merit the Court's attention.  First, it is undisputed that North American Stainless, Inc., the entity named in original Complaint was not Ray's employer or the appropriate defendant.  In his First Amended Complaint, Ray properly substitutes North American Stainless for North American Stainless, Inc., as the defendant in this action. [R. 5].  As such, North American Stainless Inc.'s Motion to Dismiss shall be denied as moot. [R. 3].

3

Second, Ray moves the Court to have his First Amended Complaint relate back to the date of the filing of the original Complaint. [R. 7]. Ray makes this motion to ensure that his amended complaint is in compliance within the ninety-day statute of limitations applicable to the ADA claim, which expired prior to the filing of the amendment. North American Stainless does not oppose this motion.

Federal Rule of Civil Procedure 15(c) governs the relation back of amendments, and states that an amendment to a complaint relates back to the date of the original complaint when:

> the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C). It is clear that under this rule, Ray's First Amended Complaint should relate back to the date on which the original complaint was filed. As previously detailed, Ray's Complaint originally named North American Stainless, Inc., which owned Stainless Alloys, Inc. and Stainless Steel Invest, Inc., rather than North American Stainless, the partnership between those two companies. [*See* R. 6]. Further, there can be no doubt that the proper entity, North American Stainless, received notice of the action and was aware that it should have been filed against it. The two entities have the same principal office and have significant overlap in company management. [R. 7 at 3-4]. Moreover, the registered agent and general counsel of North American Stainless, Inc., Nathanial Adams, is also the registered agent and general counsel of North American Stainless, Inc. [*Id*.] By way of an affidavit attached to the first motion to dismiss, Adams demonstrates his awareness of the mistake by acknowledging

that North American Stainless, Inc. does not have any employees. [R. 3-3]. Thus, it is clear that North American Stainless was on notice of the claim and should have known that the action was properly brought against it. North American Stainless does not dispute this point. Thus, Ray's motion to relate the First Amended Complaint back to the date of the filing of the original Complaint shall be granted.

B

The more substantive issues before the Court are whether Ray's complaints against the correct North American Stainless actually state claims upon which relief can be granted. North American Stainless has moved to dismiss the First Amended Complaint, and Ray has responded in opposition and with a motion for leave to file a second amended complaint. To avoid unnecessary duplication, the Court shall first consider the most recent tendered complaint and motion for leave to file that complaint.

1

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15, which provides that even if the party does not seek the amendment within the of right period, the court may give leave to permit such an amendment and should "freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). The United States Supreme Court has read this provision broadly and the Sixth Circuit has recognized that "where the underlying facts would support, a motion for leave to amend should be granted, except in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak'n Shake*, Inc., 195 F.3d 828, 834 (6th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

North American Stainless has alleged that the Court should not grant Ray leave to file an amended complaint because, based on the tendered Second Amended Complaint, it would be futile to do so. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.,* 987 F.2d 376, 382–83 (6th Cir.1993)). Thus, to determine whether the amendment is proper under Rule 15, the Court must consider whether the proposed claims could survive a motion to dismiss under Rule 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint which fails to state a claim upon with relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court "accept[s] all the Plaintiffs' factual allegations as true and construe[s] the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.,* 409 F.3d 710, 716 (6th Cir. 2005). To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

Additionally, as is now well known, the Supreme Court has clarified that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In amassing sufficient factual matter, plaintiffs need not provide "detailed factual allegations," but must advance "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "a formulaic recitation of the elements of a cause of action." *Id*. (citing *Twombly*, 550 U.S. at 555). Though courts must

accept all factual assertions as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (citing *Twombly*, 550 U.S. at 556). Once the Court has discarded the legal conclusions, the question becomes whether the actual remaining facts state a plausible claim for relief. Plaintiffs do not succeed in making a claim plausible by adorning to their complaints with facts creating a "sheer possibility that a defendant has acted unlawfully" or facts that are "merely consistent with a defendant's liability." *Id*. (citing *Twombly*, 550 U.S. at 557). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

2

North American Stainless first argues that Ray's Second Amended Complaint does not provide sufficient facts about his disability to state a claim under the Americans with Disabilities Act. Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). One way an individual may show that he is disabled under the ADA is by demonstrating that he has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(a)(A). "Major life activities" include not only general activities, such as caring for oneself, performing manual tasks, and working, but also major bodily functions, such as circulatory, endocrine, and reproductive functions. 42 U.S.C. § 12102(2).

Ray's Second Amended Complaint alleges that he suffers from Type I diabetes to a degree that his endocrine system is substantially limited and requires daily medication in order to maintain the functioning of that system. [R. 12-2 at 2]. North American Stainless states that

7

these factual allegations are insufficient "to establish that [Ray] has a disability." [R. 14 at 3]. However, Ray need not, at least at this stage, establish to a legal certainty that he is disabled or even that he has put forth a prima facie case of disability discrimination. *Tucker v. CNA Holdings, Inc.*, 5:08-CV-96-R, 2008 WL 5412829 (W.D. Ky. Dec. 30, 2008) (citing *Lindsay v. Yates,* 498 F.3d 434, 440 (6th Cir.2007)). In terms of alleging that he has a disability, Ray need only assert enough factual content to allow the court to draw the reasonable inference that he is disabled. *Id.*; *Iqbal,* 556 U.S. at 678.

Ray's Second Amended clearly satisfies this burden. Ray indicates that he has Type I diabetes, which, according to the relevant regulations, will "virtually always be found to impose a substantial limitation on a major life activity." 29 C.F.R. 1630.2(j)(3)(ii)-(iii). And while this definition could conceivably leave out the rare outlier, Ray removes all doubt by expressly stating that he suffers from Type I diabetes to the extent that his endocrine system is substantially affected. [R. 12-2 at 2]. North American Stainless believes that Ray should have "alleged that his diabetes limited major life activities, such as working, concentrating or sleeping, but failed to do so." [R 14 at 3.]. However, the company has cited to only part of the definition of "major life activity," which also expressly includes limitations to major bodily functions, and specifically the endocrine system. 42 U.S.C.A. § 12102(2). According to regulation, "it should be easily concluded that…diabetes substantially limits endocrine function." 29 C.F.R. 1630.2(j)(3)(iii). Further, even if the definition of "major life activity" was as North American Stainless has truncated to be, it is reasonable to conclude from the facts of the complaint that Ray's Type I diabetes has affected his endocrine system to the extent that he could no longer work as he once had, which is why he requested the accommodation. 29 C.F.R. 1630.2(j)(3)(ii).

8

Additionally, Ray has also alleged facts to give rise to the reasonable inference that the accommodation that he requested was reasonable. The ADA "defines 'discriminate' to include 'not making reasonable accommodation to the known physical ... limitations of an otherwise qualified individual with a disability' unless the employer 'can demonstrate that the accommodation would impose an undue hardship.' *Rorrer v. City of Stow*, 13-3272, 2014 WL 715782, at *8 (6th Cir. Feb. 26, 2014) (citing 42 U.S.C. §. § 12112(b)(5)(A)). According to Ray, he requested to be placed only on straight schedules that included only day shifts rather than return to his previous rotating schedule that alternated between day and night shifts. [R. 12-2 at 2]. It is true, that Ray has not provided a great amount of detail about what difference this would make to his Type I diabetes or how reasonable this request was under the circumstances. However, in his Second Amended Complaint, Ray does indicate that a member of management did initially tell him that his request could be accommodated. [*Id*.] Perhaps discovery will reveal that this statement was taken out of context or that the accommodation really would have been an unnecessary hardship on North American Stainless; however, for the purposes of the present motion to dismiss, these facts are sufficient. Because the Court finds that the Second Amended Complaint would not be futile on the grounds raised by North American Stainless, the Court shall permit Ray leave to file his amended claims under the Americans with Disabilities Act.

3

Finally, North American Stainless alleges that Ray's claims under the Family and Medical Leave Act fail as a matter of law because Ray did not reapply for FMLA after his leave expired, and, as a result, his claim is not yet ripe. "The FMLA entitles qualifying employees to

take up to twelve weeks of unpaid leave, without fear of termination, when the leave is taken for, inter alia, 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (citing 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1)). Courts in this circuit recognize two theories for recovery under the FMLA: (1) the entitlement or interference theory, and (2) the retaliation or discrimination theory. *Madry v. Gibraltar Nat. Corp.*, 526 F. App'x 593, 595 (6th Cir. 2013) (citing *Hoge v. Honda of Am. Mfg., Inc.,* 384 F.3d 238, 244 (6th Cir.2004)). The parties dispute the theory under which Ray brought his claim.

North American Stainless argues that Ray's claim was brought under the "involuntary-leave theory." [R. 10-1]. The Sixth Circuit does recognize this as a potential theory, noting that "[a]n employee may have a claim under § 2615(a)(1) when an employer forces an employee to take FMLA leave when the employee does not have a 'serious health condition' that precludes her from working." *Wysong*, 503 F.3d at 449 (referencing *Hicks v. Leroy's Jewelers, Inc.,* No. 98–6596, 2000 WL 1033029, at *3–4 (6th Cir. July 17, 2000)). North American Stainless is correct that under this theory, "the employee's claim ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past." *Id.* (citations omitted). Because Ray has not alleged that he sought leave after his allotted time expired, North American Stainless argues that his claim is not ripe.

However, "an involuntary-leave claim is really a type of interference claim." *Id.* Thus, while the involuntary-leave framework does not readily fit the facts alleged by Ray, that theory is just a subset of the larger interference theory of recovery. To prevail on an interference claim,

10

also known as an entitlement or failure to reinstate claim, an employee must prove that:

> (1) [he] was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) [he] was entitled to leave under the FMLA, (4) [he] gave the employer notice of [his] intention to take leave, and (5) the employer denied the employee FMLA benefits to which [he] was entitled.

*Grace v. USCAR*, 521 F.3d 655, 669 (6th Cir. 2008) (citing *Edgar v. JAC Prods.,* 443 F.3d 501, 507 (6th Cir.2006)). The Sixth Circuit has further explained that the fifth element may also be satisfied by showing that the employer "somehow used the leave against [the employee] and in an unlawful manner, as provided in either the statute *or* regulations." *Wysong*, 503 F.3d at 447 (citing *Bradley v. Mary Rutan Hosp. Assoc.,* 322 F.Supp.2d 926, 940)) (emphasis in original).

Ray has pleaded sufficient facts to show that his interference claim under the FMLA is plausible. Ray developed Type I diabetes, and took leave under the FMLA to address this health condition. North American Stainless does not dispute that an employer as defined by the FMLA and that it was aware of the nature of Ray's leave. Ray indicates that, after a period of medical treatment, he was able to return to work with certain accommodations, but North American Stainless refused to allow him to do so and then terminated him when his allotted leave time expired. In the Second Amended Complaint, the fact that Ray was forced to remain on leave even after he was able to return to work is really secondary to the fact that North American Stainless refused to allow him to return to work at all and terminated him after his leave expired. It would appear that Ray could maintain this claim under the interference theory even if he did not later reapply for FMLA leave. As discovery progresses, it may be that evidence presents itself showing that, for example, Ray's requested accommodation rendered him unable to do his prior job. Under such circumstances, "[a]n employee returning from FMLA leave is not entitled

11

to restoration unless he would have continued to be employed if he had not taken FMLA leave." *Grace*, 521 F.3d at 669 (citing *Hoge,* 384 F.3d at 245). However, assuming the aforementioned facts as true, at this stage of the litigation, the Court finds that Ray has stated a claim under the FMLA upon which relief may be granted. As such, the amendment is not futile and Ray shall be permitted leave to file his tendered Second Amended Complaint.

III

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

(1) The Defendant's Motion to Dismiss Plaintiff's Complaint and/or for Summary Judgment [R. 3] is **DENIED**, as moot;

(2) The Plaintiff's Motion to Relate His Amended Complaint back to the Date of the Original Complaint Pursuant to Rule 15(c) [R. 7] is **GRANTED**;

(3) The Plaintiff's Motion for Leave to File a Second Amended Complaint [R.12] is **GRANTED**;

(4) The Clerk is directed to file the tendered Second Amended Complaint [R. 12-2] in the record as of the date of entry of this Order.

(5) The Defendant's Motion to Dismiss Plaintiff's the First Amended Complaint [R. 10] is **DENIED**, as moot;

This 18th Day of March, 2014



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge